IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT ESENWEIN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION NO. 4:17CV3790 |
| vs. | § | |
| | § | |
| CARDNO, INC. | § | |
| | § | |
| *Defendant*. | § | |

DEFENDANT CARDNO, INC.'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

*Of counsel*:
Karmyn W. McCloud
State Bar No. 24084063
Federal I.D. No. 2108020
LITTLER MENDELSON, PC
1301 McKinney Street
Suite 1900
Houston, TX 77010
713.951.9400 (Telephone)
713.951.9212 (Telecopier)
kmccloud@littler.com

Kerry E Notestine (Attorney-in-Charge)
State Bar No. 15116950
Federal I.D. No. 2423
LITTLER MENDELSON, PC
1301 McKinney Street
Suite 1900
Houston, TX 77010
713.951.9400 (Telephone)
713.951.9212 (Telecopier)
knotestine@littler.com

ATTORNEYS FOR CARDNO, INC.

# TABLE OF CONTENTS

**PAGE**

I.    SUMMARY OF THE MOTION.....................................................1

II.    INTRODUCTION .......................................................................2

III.    STANDARD OF REVIEW FOR JUDGMENT AS A MATTER OF
LAW ........................................................................................3

IV.    ARGUMENT AND AUTHORITIES ............................................4

    A.    Esenwein Waived Wire Fraud as an Illegal Act ...................4

    B.    Esenwein failed to present sufficient evidence to Succeed on
His Sabine Pilot Claim .......................................................5

        1.    Esenwein Failed to Present Sufficient Evidence that He
was Required to Commit a Criminal Act....................6

        2.    Esenwein Failed to Present Sufficient Evidence that the
Act in Question was Illegal.......................................7

        3.    Esenwein Failed to Present Sufficient Evidence that He
was Fired for the Sole Reason for Refusing to Commit an
Illegal Act..............................................................10

        4.    Esenwein Did not Present Sufficient Evidence to Refute
Cardno's Legitimate Reason for His Termination..................13

    C.    Esenwein Presented Insufficient evidence to Support
Exemplary Damages..........................................................15

    D.    There is Insufficient Evidence to Support the Jury's Award of
Back Pay ...........................................................................19

V.    CONCLUSION...........................................................................20

i.

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arismendez v. Nightingale Home Health Care*,
  493 F.3d 602 (5th Cir. 2007) .............................................................3

*Burt v. City Burkburnett*,
  800 S.W.2d 625 (Tex.App.—Fort Worth 1990, writ denied) .............................6

*Cutrera v. Board of Sup'rs of Louisiana State Univ.*,
  429 F.3d 108 (5th Cir. 2005) ..............................................................5

*Deffendbaugh-Williams v. Wal-Mart Stores, Inc.*,
  188 F.3d 278 (5th Cir. 1999) ............................................................18

*Dresser-Rand Co. v. Virtual Automation Inc.*,
  361 F.3d 831 (5th Cir. 2004) ..............................................................3

*Hancock v. Express One Int'l*,
  800 S.W.3d 634 (Tex.App.—Dallas 1990, writ denied) .....................................7

*Hatley v. Habakkuk Cooper*,
  308 F.3d 473 (5th Cir. 2002) .............................................................19

*Kolstad v. Am. Dental Ass'n*,
  527 U.S. 526, 544 (1999)..................................................................18

*Montemayor v. City of San Antonio*,
  276 F.3d 687 (5th Cir. 2001) ..............................................................4

*Peine v. Hit Services, L.P.*,
  479 S.W. 3d 445 (Tex.App.–Houston [14th Dist.] 2015, pet.
  denied)................................................................................13, 14

*Raggs v. Mississippi Power & Light Co.*,
  278 F.3d 463 (5th Cir. 2002) ..............................................................4

*Ramsey v. Henderson*,
  286 F.3d 264 (5th Cir. 2002) ..............................................................4

*Ran Ken, Inc. v. Schlapper*,
   963 S.W.2d 102 (Tex. App.—Austin 1998, no writ.) .........................................7

*Reeves v. Sanderson Plumbing Prods., Inc.*
   530 U.S. 133, 151 (2000)..............................................................................4

*Sabine Pilot Serv. v. Hauck*,
   687 S.W.2d 733 (Tex. 1985) .......................................................*passim*

*Safeshred, Inc. v. Martinez*,
   365 S.W.3d 655 (Tex. 2012) ............................................................16

*Shear Cuts, Inc. v. Littlejohn*,
   150 S.W.3d 452 (Tex. App.—Fort Worth 2004).................................19

*Tex. Dept. of Human Serv. v. Hinds*,
   904 S.W.2d 629 (Tex. 1995) ............................................................10

*Thompson v. Cherokee Water Co.*,
   6 S.W.3d 343 (Tex.App.—Texarkana 1999, no pet.).........................7

*Vadie v. Mississippi State Univ.*,
   218 F.3d 365 (5th Cir. 2000), *cert. denied*, *Mississippi State Univ.*
   *v. Vadie*, 531 U.S. 1150 (2001) ...........................................................3

*White v. FCI USA, Inc.*,
   319 F.3d 672 (5th Cir. 2003) ..............................................................6

*Winters v. Houston Chronicle Publ'g*,
   795 S.W.2d 723 (Tex. 1990) ...............................................................6

**Statutes**

18 U.S.C. § 1341 .................................................................................2

18 U.S.C. § 1343 .................................................................................2

Texas Penal Code Section 32.42 (b)(12)(B) ...........................................2

**Other Authorities**

Federal Rules of Civil Procedure Rule 50(b)..........................................................1, 3

Federal Rules of Civil Procedure Rule 59 ................................................................1

Rule 50 ....................................................................................................................3

The defendant, Cardno, Inc. (Cardno), submits this post-trial Renewed Motion for Judgment as a Matter of Law under Rule 50(b) of the Federal Rules of Civil Procedure or, in the alternative, for a new trial under Rule 59 of the Federal Rules of Civil Procedure, and shows that Court as follows:

## I.    SUMMARY OF THE MOTION

Cardno is entitled to judgment as a matter of law because the plaintiff, Robert Esenwein (Esenwein), failed to present legally sufficient evidence at trial that would have allowed a reasonable jury to find that Cardno terminated his employment for refusing to commit wire fraud. As an initial matter, Esenwein failed to plead that he was instructed to commit wire fraud in his amended complaint—the live complaint. Thus, this allegation, which was the basis of his trial evidence, is waived. Nevertheless, judgment for Cardno is warranted because the evidence that was presented demonstrates that Esenwein was not *required* to commit *wire fraud* and that his refusal to agree to send the email in question was the *sole reason* for his termination. Furthermore, Esenwein did not present clear and convincing evidence to support the award of exemplary damages, and the evidence that was presented establishes that Cardno did not act with malice when it terminated Esenwein's employment. Moreover, Cardno presented sufficient evidence to establish good faith in its actions as a defense to exemplary damages. Finally, Esenwein did not present sufficient evidence to support the award of back pay and the evidence that was

1

presented establishes that Esenwein was not entitled to the back pay damages awarded by the jury.  For these reasons, Cardno is entitled to judgment as a matter of law.

## II.    INTRODUCTION

Esenwein—a former employee of Cardno—alleged in his Original Complaint that Cardno violated the rule of law established in *Sabine Pilot Serv. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985) in that Cardno terminated his employment for refusing to commit fraud. *See* Doc. No. 1.  On March 14, 2018, Esenwein amended his Complaint by alleging that the fraud he was requested to commit violated Section 32.42 (b)(12)(B) of the Texas Penal Code (false statement in connection with the purchase and sale of a service) and 18 U.S.C. § 1341 (mail fraud).  *See* Dkt. No. 9, at ¶ 10.  In the joint pretrial order and the following trial, Esenwein claimed the fraud Cardno asked him to commit was wire fraud in violation of 18 U.S.C. § 1343. Cardno objected to inclusion of the wire fraud claim in response to the joint pretrial order and to the evidence presented at trial on this issue.

Jury trial began on May 28, 2019, and after the plaintiff rested, Cardno moved for judgment as a matter of law on all the elements of Esenwein's claim and damages.  The Court denied Cardno's motion. After the defendant rested, Cardno again moved for judgment as a matter of law on Esenwein's claim and damages. The Court denied this motion.  The case was sent to the jury. The jury found that Cardno

terminated Esenwein's employment for the sole reason that he refused to commit wire fraud. In addition, the jury awarded Esenwein back pay and exemplary damages. *See* Doc. No. 54, Jury Instructions.

III.   STANDARD OF REVIEW FOR JUDGMENT AS A MATTER OF LAW

Judgment as a matter of law is appropriate after the close of all evidence if "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the Plaintiff] on that issue." FED. R. CIV. P. 50(b). The Court is to "draw[] all reasonable inferences and resolve all credibility determinations in the light most favorable to the non-moving party." *Dresser-Rand Co. v. Virtual Automation Inc*., 361 F.3d 831, 838 (5th Cir. 2004). Under Fifth Circuit jurisprudence, there must be a conflict in "substantial evidence to create a jury question," where substantial evidence is defined as "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 372 n.21 (5th Cir. 2000) (internal quotation omitted), *cert. denied*, *Mississippi State Univ. v. Vadie*, 531 U.S. 1150 (2001). In other words, "[t]here must be more than a mere scintilla of evidence in the record to prevent judgment as a matter of law in favor of the movant." *Arismendez v. Nightingale Home Health Care*, 493 F.3d 602, 606 (5th Cir. 2007).

In resolving a motion under Rule 50, the court should "give credence to … any uncontradicted or unimpeached evidence supporting the moving party where

such evidence comes from disinterested witnesses," *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 467 (5th Cir. 2002) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000)), and it should not "reject the plainly obvious." *Montemayor v. City of San Antonio*, 276 F.3d 687, 693 (5th Cir. 2001) (court noting that drawing all inferences in favor of non-movant does not require a reviewing court to ignore the obvious shortcomings in plaintiff's attempts to show pretext). Conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy Plaintiff's burden. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002).

IV.    ARGUMENT AND AUTHORITIES

A.    ESENWEIN WAIVED WIRE FRAUD AS AN ILLEGAL ACT

In his original complaint, Esenwein filed this lawsuit alleging that Cardno terminated his employment for refusing to commit fraud. *See* Dkt. No. 1. Then, Esenwein amended his Complaint by alleging that the fraud he was requested to commit was a deceptive business practice and/or mail fraud. These were the only two criminal fraud acts alleged in his amended Complaint, which is the live complaint. At trial, however, Esenwein did not present any evidence that he was instructed to commit these acts. Rather, he presented evidence that he was instructed to commit wire fraud. Wire fraud is a different and separate type of fraud than the

4

fraud alleged in the amended complaint. Because Esenwein failed to plead wire fraud in his amended complaint, he has waived that allegation.

Cardno anticipates that Esenwein will argue that he raised this claim of "wire fraud" before trial, particularly, in his response to Cardno's motion for summary judgment. *See* Doc. No. 21. However, a claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court *See Cutrera v. Board of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). Thus, Esenwein's claim that he was terminated for refusing to commit "wire fraud" was never properly before the court, and therefore, not properly before the jury. Cardno objected to the inclusion of this claim in the joint pretrial order and the presentation of evidence on this issue at trial. For that reason, Esenwein cannot prevail on his *Sabine Pilot* claim. Accordingly, Cardno is entitled to judgment as a matter of law.

B. ESENWEIN FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUCCEED ON HIS *SABINE PILOT* CLAIM

Even if Esenwein has not waived his claim that "wire fraud" was the illegal act underlying his *Sabine Pilot* claim, the trial evidence lacked sufficient evidence for a reasonable jury to find that Cardno terminated Esenwein's employment for refusing to commit wire fraud. Specifically, to prevail on his claim, Esenwein must have proven, by a preponderance of the evidence, that: (1) he was required to commit an illegal act carrying criminal penalties; (2) he refused to engage in the illegal act;

(3) he was discharged; and (4) the sole reason for his discharge was his refusal to commit the illegal act. *White v. FCI USA, Inc.*, 319 F.3d 672, 676 (5th Cir. 2003); Doc. No. 54 at p. 10. While the trial evidence established that Esenwein was terminated, Esenwein failed to provide sufficient evidence proving the other elements of his claim. In fact, the trial evidence presented plainly negates that Esenwein was required to commit any illegal act; that the act in question was wire fraud; and that he was terminated solely for refusing to commit wire fraud. As such, Esenwein failed to meet his evidentiary burden, and therefore, Cardno is entitled to judgment as a matter of law.

        1.    *Esenwein Failed to Present Sufficient Evidence that He was Required to Commit a Criminal Act*

As an initial matter, to succeed on his *Sabine Pilot* claim, Esenwein "must be unacceptably forced to choose between risking criminal liability or being discharged." W*hite*, 319 F.3d 672 at 676-677; *Winters v. Houston Chronicle Publ'g*, 795 S.W.2d 723, 724 (Tex. 1990). That means Esenwein must demonstrate that Cardno required, not just requested, him to commit an unlawful act. *Burt v. City Burkburnett*, 800 S.W.2d 625, 627 (Tex.App.—Fort Worth 1990, writ denied).

The trial evidence irrefutably established that Esenwein's supervisor, Chad Martin, planned on sending an email to Benson Sainsbury. Sainsbury is the president of InSite, a company that assist schools with land acquisition. In that email, Martin intended to send Sainsbury the contact information for one of Cardno's clients,

6

Conroe ISD, for Sainsbury to contact Conroe ISD directly. *See* Plaintiff's Exhibit 2 (attached). The trial evidence was unrebutted that Martin did not ask Esenwein to send any email to Conroe ISD, only to approve the email that Martin wanted to send to InSite. There was some evidence that Martin may have requested Esenwein to follow up with Conroe ISD, but no evidence that Martin asked that Esenwein do this by email or any other specific means of communication. Furthermore, the evidence was unrebutted that Martin never actually sent the email in question, but either did not send anything or revised it to meet Esenwein's objections. Thus, there was no basis for Esenwein's claim that Martin *required* him to commit a criminal act through emails.

2.     *Esenwein Failed to Present Sufficient Evidence that the Act in Question was Illegal*

In addition to showing that he was "required" to commit an illegal act, Esenwein must show that his performance of the requested act would actually result in criminal penalties against him. *See Ran Ken, Inc. v. Schlapper*, 963 S.W.2d 102, 105 (Tex. App.—Austin 1998, no writ.). This is a threshold matter to come within the *Sabine Pilot* exception. *Hancock v. Express One Int'l*, 800 S.W.3d 634, 636 (Tex.App.—Dallas 1990, writ denied). In other words, even if he was terminated for refusing to perform the requested act, if that act is not criminal, Esenwein cannot prevail on his *Sabine Pilot* claim. *Thompson v. Cherokee Water Co.,* 6 S.W.3d 343, 345-46 (Tex.App.—Texarkana 1999, no pet.).

7

At trial, Esenwein only presented evidence of one criminal act that would have been violated had he performed the requested act—wire fraud.  *See* Doc. No. 54 at p. 15. He admitted that he believed he was being asked only to lie to a client and had no thought that he could be sent to jail for agreeing to allow InSite to send the email to Conroe ISD.  Even assuming that there was a demand to engage in a criminal act through use of email, the evidence presented was insufficient to establish that the requested act constituted wire fraud.  To commit wire fraud, the evidence must show, among other things, that the defendant knowingly devised or intended to devise a scheme to defraud and that the defendant acted with the specific intent to defraud. *See* Jury Instructions, Doc. No. 54, p. 7-8.  A "scheme to defraud" means any plan, pattern, or course of action intended to deprive another of money or property. *Id.* at p. 8.  At trial, neither party presented any evidence that Esenwein was asked to perform any act that would have deprived Conroe ISD of money or property, and for that reason, alone, his claim does not fall within the *Sabine Pilot* exception.

The trial evidence demonstrated that Martin told Esenwein that he wanted to introduce Sainsbury to Conroe ISD in return for Sainsbury introducing Martin to one of InSite's contacts in Texas.  *See* Doc. No. 57, Defendant's Trial Exhibit No. 17 (attached).  Additionally, Martin testified that he anticipated that Conroe ISD would be expanding in the future. Thus, he thought InSite could assist Conroe ISD future acquisitions. Esenwein presented evidence that Martin wanted him to relay to

Conroe ISD that Cardno had a long working relationship with InSite and that InSite did great work. Esenwein also testified that Martin wanted Esenwein to make the introduction so that InSite would contract with Cardno on other projects InSite had.

Even accepting all the evidence as true, this conduct does not constitute wire fraud. Particularly, there is nothing in the evidence suggesting that Martin or anyone intended to *deprive* Conroe ISD of money or property. The evidence actually illustrates the opposite. Martin specifically denied that he intended to deprive or harm Conroe ISD. In fact, Martin wanted to make the introduction between InSite and Conroe ISD for their mutual *benefit* due to the synergies in their businesses. He further testified that he would not have received any kickbacks or money from the introduction. There was no evidence that InSite, had they secured work from Conroe ISD, would have done anything other than a competent job in providing services to Conroe ISD., Esenwein testified that he had no knowledge of the quality of InSite's services, and thus, he did not know if Conroe ISD would have been harmed if it contracted services with InSite. This evidence undercuts any inference that Martin intended to or devised a scheme to harm or deprive Conroe ISD of any money or property. Absence such showing, wire fraud does not exist. Because Esenwein presented insufficient evidence that the requested act constituted wire fraud, he cannot succeed on his *Sabine Pilot* claim. Therefore, Cardno is entitled to judgment as a matter of law.

3.    *Esenwein Failed to Present Sufficient Evidence that He was Fired for the Sole Reason for Refusing to Commit an Illegal Act*

Notwithstanding the fact Esenwein failed to present sufficient evidence that he was required to commit wire fraud, judgment for Cardno is also warranted because there is insufficient evidence that Cardno terminated Esenwein's employment solely for his refusal to commit wire fraud.  To legally prevail on his claim, Esenwein must have shown that his refusal to commit wire fraud was the *sole* reason for his termination.  No other factor must have been considered when Cardno made the decision to terminate Esenwein's employment. *See Tex. Dept. of Human Serv. v. Hinds,* 904 S.W.2d 629, 633 (Tex. 1995) (An employer who discharges an employee both for refusing to perform an illegal act and for a legitimate reason cannot be liable for wrongful discharge).

Despite this high burden, the jury returned a verdict for Esenwein in the absence of sufficient evidence.  Cardno sufficiently demonstrated that Esenwein's refusal was not the *sole* reason for his termination. Specifically, Cardno presented evidence from Denise Decker that she and Mike Rudd decided to terminate Esenwein's employment after a workplace investigation revealed that Esenwein had created a hostile work environment.[1]  To support Decker's and Rudd's decision, Cardno presented three disinterested witnesses—Rebecca Gregg, Gretchen Gotlieb

---

[1] Decker also testified that she and Rudd informed David Blankenhorn, a senior level manager in the NRHS division, of their decision to terminate Esenwein's employment. Blankenhorn did not oppose the decision.

10

and Brandon Wieme, all of whom are former employees of Cardno. Gotlieb was the Houston office manager at the time of Esenwein's employment. She testified that Esenwein's behavior drastically changed after Rudd's January 13th visit to the Houston office. Rudd was two managers removed from Esenwein in his division. Gotlieb testified that Esenwein had "power trips" after it was announced that he would be named the Houston Branch Manager. These "power trips" and change in behavior is what prompted Gotlieb as the office manager to lodge the complaint against Esenwein. Gotlieb testified that she was unaware of the incident between Martin and Esenwein prior to making her complaint. She also testified that Martin did not prompt or suggest that she make a complaint against Esenwein.

After Gotlieb's complaint was referred to Decker for investigation, Decker testified she interviewed Gotlieb, Gregg, Wieme and another staff member about the Houston environment. At trial, Gregg, Gotlieb, and Wieme all testified that the statements in Decker's investigation notes (which were contained in Defendant's Exhibit 18, which is attached) were accurate. They all testified that Esenwein regularly spoke to them or they observed him speaking to other NRHS staff in a condescending, demeaning, and belittling manner. They testified that Esenwein rejected any discussion of opinions or ideas that differed from his own; was unapproachable; and did not mentor junior staff.

11

Gregg also testified that Esenwein said she was "going to hell" for taking a trip with her significant other. Wieme testified that he overheard Esenwein make this comment to Gregg. Gregg also testified that Esenwein referred to the female workspace as a "henhouse," which Gregg felt was derogatory. Additionally, Gregg testified that Esenwein would routinely invade her personal space. For example, Esenwein would hover over her when speaking to her and point his finger in her face. Furthermore, Gregg recounted a situation where Esenwein's behavior was so unprofessional toward her and other NRHS staff members that a male colleague had to intervene to deescalate Esenwein's behavior. Finally, Gregg testified that Esenwein instructed her to misrepresent her time on project. Gregg submitted documentation supporting her comments to Decker.

In addition to initiating the complaint, Gotlieb testified that Esenwein berated her in front of the staff. She felt that his actions were unprofessional. She also testified that Esenwein's behavior was volatile. All of them—Gregg, Wieme, and Gotlieb—admitted they reported concerns to Decker that Esenwein would either retaliate or behave worse as a result of their participation in Decker's investigation. All of these witnesses testified that the working environment was not conducive until after Esenwein's separation. Based on Rudd's observation during his January 13th visit, Rudd and Decker had no reason to disbelieve the reported comments. Decker testified that she and Rudd made the decision to terminate based on these events.

12

There was no contradictory evidence on this issue. Consequently, Cardno terminated Esenwein's employment for creating a hostile work environment, and the alleged request to commit wire fraud was not the sole reason for termination.

> 4. *Esenwein Did not Present Sufficient Evidence to Refute Cardno's Legitimate Reason for His Termination*

Esenwein presented insufficient evidence to rebut the overwhelming evidence regarding Cardno's proffered legitimate reason for his termination. Specifically, Esenwein did not present the type of evidence a Texas appellate court considered constructive when analyzing the "sole reason" element of a *Sabine Pilot* claim. In *Peine v. Hit Services, L.P.*, 479 S.W. 3d 445, 450 (Tex.App.–Houston [14[th] Dist.] 2015, pet. denied), a Texas appellate court considered the following factors when determining whether an employee has presented sufficient circumstantial evidence as to whether his refusal to commit an illegal act was the *sole* reason for his termination:[2]

> (1)   Those making the decision to terminate an employee have knowledge of the [refusal to commit the alleged act];
> (2)   Expression of a negative attitude toward the employee's [refusal to commit the act] by those making the termination decision;
> (3)   A failure to adhere to established company policies;
> (4)   Discriminatory treatment in comparison to other similarly-situated employees; and
> (5)   Evidence that the stated reason for the employee's termination was false.

---

[2] The state court adopted the factors that Texas courts consider under a workers' compensation retaliation case.

*Peine*, 479 S.W. 3d at 450.

Though the decision-makers, Decker, Rudd, and David Blankenhorn, had knowledge of the incident between Martin and Esenwein, Esenwein presented no evidence suggesting any of the decision-makers expressed a negative attitude toward him because of the incident with Martin. In fact, the evidence suggest that neither Rudd nor Decker harbored any negative feelings toward Esenwein. Notably, after the incident with Martin, Rudd announced that Esenwein would be named the Branch Manager for the Houston office. It is inconsistent to Esenwein's claim that Rudd was hostile to him for refusing to perform the alleged illegal act, when Rudd formally announced that Esenwein would be named branch manager *after* Esenwein's refusal. Furthermore, Esenwein presented no evidence that Cardno failed to adhere to its policies in its actions leading to his termination. Neither did he present any evidence of any employee who engaged in the same conduct but was not terminated. In fact, Decker specifically testified that she was unaware of any senior manager or vice president who engaged in conduct similar to that reported by Gotlieb, Gregg, and Wieme.

Moreover, Esenwein did not present any sufficient evidence to support an inference that Cardno's legitimate reason for his termination was false. Gregg testified she previously complained to her supervisor about Esenwein's communication. Esenwein even admitted that he held a staff meeting after Gregg

14

had complained to discuss his communication and/or interpersonal skills. Furthermore, Gregg, Gotlieb, and Wieme all testified that they were not aware of the incident between Martin and Esenwein before speaking with Decker and that Martin did not prompt or suggest that they raise any complaints or concerns against Esenwein. Furthermore, Rudd expressly indicated in his memo that he personally observed Esenwein overact on at least three different occasions when interacting with Martin. During that meeting—and at trial— Esenwein admitted to this conduct.

In sum, Esenwein presented insufficient evidence to show a connection between his termination and the incident with Martin, let alone show that his refusal to approve Martin's email or to allegedly engage in some follow-up discussion with Conroe ISD was the *sole* reason for his termination.  At best, Esenwein subjectively believed that the reason for his termination was false, as he expressly testified that he "imagined" a connection between the incident with Martin and his termination. Esenwein's subjective belief, without more, is insufficient to prevail on his claim. Thus, there was insufficient evidence to show that Esenwein was terminated *solely* for refusing to commit an illegal act. Accordingly, Cardno is entitled to judgment as a matter of law.

C.   ESENWEIN PRESENTED INSUFFICIENT EVIDENCE TO SUPPORT EXEMPLARY DAMAGES

Even assuming, *arguendo*, there is sufficient evidence to support Esenwein's *Sabine Pilot* claim, there is not sufficient evidence to support the award of exemplary

15

damages.   An award of exemplary damages must be supported by clear and convincing evidence that Cardno maliciously harmed Esenwein.  *See* Doc. No. 54. at p. 18.  In order to support exemplary damages in a *Sabine Pilot* claim, the harm must be something "independent and qualitatively different from the compensable harms associated with the cause of action." *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 661 (Tex. 2012)(reversing an award of exemplary damages in a *Sabine Pilot* claim because there was insufficient evidence the plaintiff suffered any harm separate from his termination). This means that the harm cannot be the termination alone, otherwise, every *Sabine Pilot* case would warrant exemplary damages. Thus, a showing of malice requires something more.

The Texas Supreme Court held malice might exist in a *Sabine Pilot* claim "where the employer circulates false or malicious rumors about the employee before or after the discharge…or actively interferes with the employee's ability to find other employment. *Id.* at 661.  Malice could be also shown in a *Sabine Pilot* case by evidence that the employer terminated the plaintiff's employment knowing the reason for doing so is unlawful.  *Id*. at 662-63.

At trial, there was insufficient evidence that Cardno maliciously harmed Esenwein. First, there is no evidence that Cardno intentionally terminated Esenwein's employment despite knowing the reason was unlawful.  The trial evidence expressly demonstrated that the office manager for the Houston office,

16

Gotlieb, made a complaint against Esenwein. Neither HR nor management had any reason to believe that Gotlieb's complaint was connected to the incident between Martin and Esenwein. This belief was supported by the evidence, as Gotlieb denied any knowledge of the incident when she made the complaint against Esenwein. In addition, Decker intentionally removed Martin from the investigation to eliminate any possibility of retaliation. Likewise, Decker did not consult or involve Martin in any way in the termination decision. Thus, Cardno removed the only person Esenwein contends had any negative *animus* toward him from the events leading up to his termination. Moreover, none of the comments reported to Decker by the Houston employees Decker interviewed were related to the incident between Martin and Esenwein. Thus, there is no evidence that suggests Cardno terminated Esenwein's employment despite knowing it was unlawful to do so.

Second, none of the sort of evidence which the Texas Supreme Court described could support a malice finding is present here. For instance, neither party presented evidence that Esenwein was harassed prior to his termination. While Esenwein made a complaint of harassment against Wieme, Esenwein admitted that he subjectively believed that Weime's actions were connected to the complaint against Martin. The trial evidence clearly illustrated that was not the case. Wieme denied any knowledge of the incident or Esenwein's complaint. Additionally, there was no absolutely no evidence presented that Cardno prevented Esenwein from

17

obtaining subsequently employment. Thus, the evidence presented does not rise to the level necessary to support exemplary damages, and therefore, the award should be reversed.

In addition to the lack of malice or reckless disregard, Cardno's good faith must also be considered. Under the standard set forth in *Kolstad*, employers who have made "good-faith" efforts to comply with applicable discrimination statutes cannot be held vicariously liable for punitive damages for the discriminatory decisions of their supervisors. *Kolstad v. Am. Dental* Ass'n, 527 U.S. 526, 544 (1999); *Deffendbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278 (5th Cir. 1999). The Supreme Court's "good faith" standard may be met where employers have adopted anti-retaliation policies and educated their employees on the prohibitions against retaliation in the workplace. *Id*.

Cardno presented evidence of its good faith efforts to comply with anti-retaliation laws. For instance, Decker testified that Cardno is an equal opportunity employer that maintains policies prohibiting unlawful retaliation and has distributed and made these policies known and available to its employees. The unrebutted evidence demonstrated that Cardno strongly encouraged its employees to report instances of suspected unlawful behavior, and trained its employees on its policies and charges each with the responsibility of enforcing the policies at its numerous locations throughout the United States. The trial evidence showed that after Decker

18

investigated the incident between Martin and Esenwein, she explicitly encouraged Esenwein to report any suspected retaliation. *See* Plaintiff's Exhibit 5 (attached). When Esenwein made complaints subsequent to the incident with Martin, Decker promptly addressed all of them to eliminate any unlawful retaliation. Cardno also required Martin to take Anti-Harassment training, among other trainings, to prevent retaliation against Esenwein. Where such evidence of good faith is present, exemplary damages are not warranted. *Hatley v. Habakkuk Cooper*, 308 F.3d 473, 477 (5th Cir. 2002); *Shear Cuts, Inc. v. Littlejohn*, 150 S.W.3d 452 (Tex. App.— Fort Worth 2004).

D.    THERE IS INSUFFICIENT EVIDENCE TO SUPPORT THE JURY'S AWARD OF BACK PAY

In addition, the Court should disregard the jury's answer on economic damages in Question 2. At trial, Martin testified that Esenwein would have been terminated during his upcoming performance evaluation in June 2016. Particularly, Esenwein was not meeting his business development goals. He had an annual goal of developing $1 Million in business. From April 2014 to June 2015, Esenwein only met 25% of his expected business development goal. The two higher level managers for the NRHS division, Rudd and Blankenhorn, wanted to terminate Esenwein's employment for performance (*i.e.*, prior to the December 2015 incident with Martin); however, Martin advocated for Esenwein because Martin had confidence that Esenwein could meet the goal, or at least significantly increase the amount of

19

business he had been developing. Because Martin vouched for Esenwein, in September 2015, Rudd and Blankenhorn decided only to reduce Esenwein's hours in lieu of termination. Esenwein, however, understood that he had to improve his performance and increase his business development or he would be terminated.

The trial evidence presented sufficiently demonstrated that Esenwein did not achieve his business development goals at the time of his termination. Thus, Martin testified that he would have terminated Esenwein in June of 2016 due to Esenwein's performance as Rudd and Blankenhorn previously wanted to do. The trial evidence supports this fact as Martin testified that the Houston office experienced multiple layoffs and separations due to the lack of business in that office. Currently, there is only one individual in the NRHS division based in the Houston office. Because the evidence sufficiently established that Esenwein's employment would have been terminated in June 2016, and Esenwein admitted that he was medically unable to work for several months following his February 9, 2016 termination, Esenwein did not suffer a loss of income to support the jury's award of back pay damages.

V.     CONCLUSION

As shown above, there was not sufficient evidence to support the jury's finding that Cardno terminated Esenwein's employment for the sole reason that he refused to commit wire fraud. Cardno is entitled to judgment was a matter of law.

Dated: July 2, 2019                    Respectfully submitted,

                                       /s/ Kerry E Notestine
                                       Kerry E Notestine (Attorney-in-Charge)
                                       State Bar No. 15116950
*Of counsel*:                          Federal I.D. No. 2423
                                       LITTLER MENDELSON, PC
Karmyn W. McCloud                      1301 McKinney Street
State Bar No. 24084063                 Suite 1900
Federal I.D. No. 2108020               Houston, TX  77010
LITTLER MENDELSON, PC                  713.951.9400 (Telephone)
1301 McKinney Street                   713.951.9212 (Telecopier)
Suite 1900                             knotestine@littler.com
Houston, TX  77010
713.951.9400 (Telephone)               ATTORNEYS FOR CARDNO, INC.
713.951.9212 (Telecopier)
kmccloud@littler.com

## CERTIFICATE OF SERVICE

I certify that on July 2, 2019, I served a copy of the foregoing document to the following counsel of record via the clerk's electronic filing system addressed as follows:

Esenwein Holmes
13201 Northwest Freeway, Suite 800
Houston, Texas 77040
Dholmes282@aol.com

ATTORNEY FOR PLAINTIFF

                                       /s/ Karmyn McCloud
                                       Karmyn McCloud